(845 P.2d 65)

No. 67,383

DAVID R. BAUMANN, *Appellant*, v. EXCEL INDUSTRIES, INC., *Appellee*.

Opinion
filed January 13, 1993.

*Joseph Seiwert* and *Larry W. Wall*, of Wichita, for the appellant.

*Anne M. Hull* and *Eldon L. Boisseau*, of Turner and Boisseau, Chartered, of Wichita, for the appellee.

Before BRISCOE, C.J., DAVIS and RULON, JJ.

BRISCOE, C.J.: This is a product liability case raising issues of statutory interpretation which are of first impression in the appellate courts of Kansas. David Baumann brought this action on July 27, 1990, for injuries he suffered when he attempted to prime the fuel pump of a lawn mower while the mower's engine was running. The mower was manufactured by Excel Industries, Inc., in May 1966. Baumann was injured on July 31, 1988. The district court entered summary judgment in favor of Excel, after concluding Baumann's action was barred by the "useful safe life" 10-year period of repose. The court also found the statutory exception to the 10-year period of repose, K.S.A. 1991 Supp. 60-3303(b)(2)(D), was inapplicable because the injury-causing aspect of the mower was readily discoverable by a reasonably prudent person at the time of delivery. Baumann appeals the district court's entry of summary judgment in favor of Excel.

In determining whether Baumann's product liability action is time barred, we affirm the district court's application of the statute of repose in 60-3303 of the Kansas Product Liability Act (KPLA), K.S.A. 60-3301 *et seq*. While concluding the court erred in holding Baumann to a clear and convincing standard rather than a

preponderance of the evidence standard at the summary judgment stage, we affirm the district court's ultimate conclusion that Baumann failed to overcome the presumption under 60-3303(b)(1) that the mower's useful safe life had expired. Finally, we affirm the court's ruling that the injury-causing aspect of the mower was discoverable by a reasonably prudent person within 10 years of delivery.

The parties do not dispute the underlying facts. The injury-causing product in this case was a Model XL 172 Hustler heavy-duty riding lawn mower which was manufactured in 1966. The mower was last in the control of Excel no later than 1978 as Leroy Tenbarge bought the used mower from Excel in 1977 or 1978. Baumann purchased the mower from Tenbarge in 1980. When Baumann purchased the mower, he had to make some repairs to it.

Baumann was injured on July 31, 1988, when he attempted to prime the engine of the mower while the engine was running. Before the injury occurred, Baumann placed his hand between moving parts of the mower in an attempt to prime the mower's fuel pump by using the manual valve to pump fuel into the engine. This manual valve is located between the upper and lower sides of the drive belt, which rotates rapidly when the engine is running and moves the pulleys to transfer power from the mower's engine to the mower's transmission and blades. Four fingers of Baumann's left hand were severed when his hand was pulled into the drive belt and against a moving pulley. Two of his fingers were later reattached, but have not regained full mobility. Prior to his injury, Baumann was a mechanic. He now supervises the work of other mechanics.

I. Applicable statute of repose.

The threshold question in this case is whether the general statute of repose, K.S.A. 1991 Supp. 60-513(b), controls over the specific statute of repose, 60-3303(b). A statute of repose limits the time during which a cause of action can arise and usually runs from an act of the alleged tortfeasor. A statute of repose abolishes the cause of action after the passage of time even though the cause of action may not have yet accrued. By contrast, a statute of limitations extinguishes the right to prosecute an ac-

crued cause of action after a period of time. See *Harding v. K. C. Wall Products, Inc.*, 250 Kan. 655, 668, 831 P.2d 958 (1992). In *Harding*, the court concluded both 60-513(b) and 60-3303(b) are statutes of repose.

Excel argues Baumann's claim is barred by 60-513(b), which provides:

"Except as provided in subsection (c), the causes of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, *but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action.*" (Emphasis added.)

Excel alleges the act that gave rise to the cause of action was the manufacturing of the mower in 1966. Excel argues Baumann's action filed in 1990 is barred by 60-513(b).

Baumann counters that Excel did not raise the statute of limitations as an affirmative defense before the district court and cannot now raise it on appeal. While 60-513(b) is not a statute of limitation, a statute of repose would fall within the description in K.S.A. 1991 Supp. 60-208(c) of defenses which must be raised as affirmative defenses. A statute of repose would qualify as "any other matter constituting an avoidance or affirmative defense." K.S.A. 1991 Supp. 60-208(c). Although Excel made substantial and repeated references to the statute of repose in 60-3303, it never directly cited 60-513(b). Excel did raise a statute of repose issue, but did not directly raise it under 60-513(b).

As a general rule, issues raised for the first time on appeal will not be reviewed. However, there are three recognized exceptions to that general rule:

" '(1) Cases where the newly asserted theory involves only a question of law arising on proved or admitted facts and which is finally determinative of the case;

" '(2) cases where consideration of a question raised for the first time on appeal is necessary to serve the ends of justice or to prevent denial of fundamental rights; and

" '(3) cases where a judgment of a trial court may be upheld on appeal even though the court may have relied on the wrong ground or assigned a wrong reason for its decision.' [Citation omitted.]" *In re Conservatorship of Marcotte*, 243 Kan. 190, 196, 756 P.2d 1091 (1988).

Even if not directly raised before the district court as an affir-
mative defense, the issue of whether 60-513(b) would bar this
action presents a question of law arising on proved or admitted
acts. Here, it had been proved or admitted that the mower was
manufactured in 1966, that the last time the mower was in the
control of Excel was no later than 1978, that the injury occurred
on July 31, 1988, and that this action was filed July 27, 1990.
The only questions remaining are questions of law. Further, the
resolution of whether 60-513(b) applies to and bars this action
could provide an alternate ground for upholding the district
court's decision that this action was time barred.

Baumann argues 60-3303 applies to determine whether his ac-
tion is time barred. In fact, Excel moved for summary judgment,
arguing it had no liability because the useful safe life of the mower
had expired under 60-3303. K.S.A. 1991 Supp. 60-3303 provides
in pertinent part:

"(a)(1) Except as provided in paragraph (2) of subsection (a) of this section,
a product seller shall not be subject to liability in a product liability claim
if the product seller proves by a preponderance of the evidence that the
harm was caused after the product's 'useful safe life' had expired. 'Useful
safe life' begins at the time of delivery of the product and extends for the
time during which the product would normally be likely to per-
form . . . . '[T]ime of delivery' means the time of delivery of a product
to its first purchaser . . . who was not engaged in the business
of . . . selling such products . . . .

. . . .

"(2) A product seller may be subject to liability for harm caused by a
product used beyond its useful safe life to the extent that the product seller
has expressly warranted the product for a longer period.

"(b)(1) *In claims that involve harm caused more than 10 years after time
of delivery, a presumption arises that the harm was caused after the useful
safe life had expired. This presumption may only be rebutted by clear and
convincing evidence.*

"(2)(A) If a product seller expressly warrants that its product can be utilized
safely for a period longer than 10 years, the period of repose, after which
the presumption created in paragraph (1) of this subsection arises, shall be
extended according to that warranty or promise.

. . . .

"(D) The ten-year period of repose established in paragraph (1) of this
subsection shall not apply . . . if the injury-causing aspect of the product
that existed at the time of delivery was not discoverable by a reasonably
prudent person until more than 10 years after the time of delivery . . . .

"(c) . . . *[N]othing contained in subsections (a) and (b) above shall modify the application of K.S.A. 60-513, and amendments thereto.*" (Emphasis added.)

Excel argues the legislature's reference to 60-513 in 60-3303(c) indicates 60-513 controls. K.S.A. 1991 Supp. 60-513(b) bars the filing of any action "more than 10 years beyond the time of the act giving rise to the cause of action." K.S.A. 1991 Supp. 60-3303(b) allows a product liability action beyond 10 years after time of delivery if the plaintiff can successfully rebut the presumption that harm caused more than 10 years after delivery is harm that was caused after the useful safe life of the product had expired. Although 60-3303(b) can provide a plaintiff with additional time to file an action if certain conditions are met, Excel argues the reference to 60-513 in 60-3303(c) negates whatever exceptions to the 10-year statute of repose that 60-3303(b) would provide.

As a general rule, a specific statute, such as 60-3303, controls over a general statute, such as 60-513. See *Kansas Racing Management, Inc. v. Kansas Racing Comm'n,* 244 Kan. 343, 353, 770 P.2d 423 (1989). In particular, statutes that provide a different limitation than that found in Article 5 of the Kansas Code of Civil Procedure control over the statutes found in Article 5. See *Gifford v. Saunders,* 207 Kan. 360, 362, 485 P.2d 195 (1971); K.S.A. 60-501. An exception to the specific statute controlling over the general statute rule arises when "the legislature intended to make the general statute controlling." *Kansas Racing,* 244 Kan. at 353. When interpreting two statutes which appear to address similar subject matter, the statutes should be read together and harmonized if possible. *Kansas Racing,* 244 Kan. at 353.

The KPLA was adopted in 1981 (L. 1981, ch. 231). In enacting the KPLA, the Kansas Legislature used the Model Uniform Product Liability Act (MUPLA) as a reference, but did not adopt the MUPLA in its entirety. Westerbeke, *Some Observations on the Kansas Product Liability Act (Part I),* 53 J.K.B.A. 296 (1984). The MUPLA, developed by the United States Department of Commerce, was published, with commentary, at 44 Fed. Reg. 62,714 *et seq.* (1979). The purpose of both the MUPLA and the KPLA is to merge all legal theories of products liability into one single product liability claim. *Chamberlain v. Schmutz Mfg. Co.,*

*Inc.,* 532 F. Supp. 588, 590 (D. Kan. 1982), citing K.S.A. 60-3302(c).

The MUPLA § 110(C) contained a provision for a statute of limitation that was not included in the KPLA: "No claim under [the MUPLA] may be brought more than two (2) years from the time the claimant discovered, or in the exercise of due diligence should have discovered, the harm and the cause thereof." 44 Fed. Reg. at 62,732. Instead of that provision, the Kansas Legislature provided: "[N]othing contained in subsections (a) and (b) above shall modify the application of K.S.A. 60-513, and amendments thereto." K.S.A. 1991 Supp. 60-3303(c).

It has been argued that the reference to 60-513 in 60-3303(c) nullified the exemption in 60-3303(b)(2)(D) for harm caused by prolonged exposure to harmful material or where the injury-causing aspect of the product was not discoverable by a reasonably prudent person. See Westerbeke, 53 J.K.B.A. at 308. In *Harding,* the Supreme Court disagreed. The court in *Harding* held that the categories of claims covered by 60-3303(b)(2)(D) are exempt from the 10-year statute of repose. 250 Kan. at 670.

In *Harding,* plaintiff contracted malignant pleural mesothelioma in 1988 after prolonged exposure to asbestos-containing products. Plaintiff's last exposure to products manufactured by defendant was prior to January 1, 1977. He died on October 26, 1988; and his wife filed the action on September 5, 1990.

The defendant in *Harding* moved for summary judgment under the 10-year statute of repose in 60-513(b). By passage of 60-3303(e); the legislature provided a revival statute designed to allow claims such as Harding's to escape the effect of the 10-year statute of repose. Defendant challenged the constitutionality of the revival statute.

The Kansas Supreme Court traced the evolution, both in case law and in legislative enactments, of the tort statute of limitations. It found no reason to invalidate 60-3303(e) as unconstitutional, either under the federal or the state constitution. In particular, the court stated the provision of 60-3303(c), which provides nothing contained in 60-3303(a) and (b) shall modify 60-513, does not nullify the exceptions in 60-3303(b)(2)(D). Those exceptions include prolonged exposure to a defective product, which is not present in this case, and if the injury-causing aspect of the product

was not discoverable by a reasonably prudent person, which is an issue in this case.

The court in *Harding* also reiterated the rule that " 'statutes complete in themselves, relating to a specific thing, take precedence over general statutes.' " 250 Kan. at 661. In doing so, the court found that the specific statute of 60-3303 applied instead of 60-513.

We find the court's reasoning in *Harding* instructive and conclude 60-513(b) does not control over 60-3303(b). To find otherwise would ignore the general rule of statutory interpretation that a specific statute should control over a general statute. The legislature has not clearly expressed an intent to have the general statute control. Further, to apply 60-513(b) would render the rebuttable presumption in 60-3303(b)(1) meaningless. It is presumed the legislature would not enact meaningless legislation. *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992). Finally, to allow 60-513(b) to control would remove the quid pro quo for adopting the KPLA statute of repose, which was designed to balance the concerns of the manufacturer with the right of a consumer to recover for injuries suffered.

II. Useful safe life.

Baumann contends the district court erred in ruling as a matter of law that the useful safe life of the mower had expired. He argues he should not have been held to a clear and convincing evidence standard at the summary judgment stage of the proceeding. Baumann bases this argument on Justice Rehnquist's dissent in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 268, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) ("The Court, apparently moved by concerns for intellectual tidiness, mistakenly decides that the 'clear and convincing evidence' standard governing finders of fact in libel cases must be applied by trial courts in deciding a motion for summary judgment in such a case."). The Kansas Supreme Court has followed the *Anderson* application of the clear and convincing evidence standard at the summary judgment stage of the proceedings in a state court libel action. *Ruebke v. Globe Communications Corp.*, 241 Kan. 595, 602, 738 P.2d 1246 (1987). In *Ruebke*, 241 Kan. at 602, the majority opined the purpose of the *Anderson* decision regarding the summary judgment eviden-

tiary standard was "[t]o provide added protection to the press from libel suits."

Although *Anderson* and *Ruebke* were both libel actions, Justice Brennan's dissent in *Anderson* opined the rule announced extended to all civil actions, not just libel or defamation suits. 477 U.S. at 257-58. If that is true, the district court in the present case did not err in "view[ing] the evidence presented through the prism of the substantive evidentiary burden." 477 U.S. at 254.

We conclude the application of a clear and convincing evidence standard at the summary judgment stage is unique to libel cases because First Amendment rights are at issue. In *Ruebke*, 241 Kan at 602, the court stated:

"To provide added protection to the press from libel suits, the United States Supreme Court recently changed the direction of summary judgment under the federal rules. In a libel action brought by a 'public figure,' that individual is required under the First Amendment to prove by clear and convincing evidence that the defendant acted with 'actual malice, a knowing or reckless disregard of the truth.' That the clear and convincing standard of proof of malice applies at the summary judgment stage was decided in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). The court stated:

'[T]he inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. . . . [W]here the First Amendment mandates a 'clear and convincing' standard, the trial judge in disposing of a directed verdict motion should consider whether a reasonable factfinder could conclude, for example, that the plaintiff had shown actual malice with convincing clarity.' 477 U.S. at 252."

Federal court decisions interpreting the federal code of civil procedure are highly persuasive in applying the Kansas Code of Civil Procedure, which is based on the federal code. See *Stock v. Nordhus*, 216 Kan. 779, 782, 533 P.2d 1324 (1975). However, in the context of fraud, the Kansas Supreme Court has stated that, although a party alleging fraud must prove it by clear and convincing evidence, "a party resisting a motion for summary judgment need not present this quantum of evidence in order to succeed in opposing the motion." *Gorham State Bank v. Sellens*, 244 Kan. 688, 691, 772 P.2d 793 (1989). The Supreme Court has subsequently opined that clear and convincing evidence is a

quality and not a quantum of proof. *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 448, 827 P.2d 24 (1992).

We conclude the district court erred in requiring Baumann to meet the clear and convincing evidence standard at that stage of the proceedings. However, because all of the evidence is documentary, this does not prevent us from reviewing the evidence de novo and applying the proper standard, preponderance of the evidence. See *Kneller v. Federal Land Bank of Wichita*, 247 Kan. 399, 400, 799 P.2d 485 (1990).

On appeal, the standard of review is well established. "When a summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment. [Citations omitted.]" *Patterson v. Brouhard*, 246 Kan. 700, 702-03, 792 P.2d 983 (1990).

The question then is whether the court erred in ruling Baumann did not meet his evidentiary burden. K.S.A. 1991 Supp. 60-3303(a)(1) states in part:

"Examples of evidence that is especially probative in determining whether a product's useful safe life had expired include:

(A) The amount of wear and tear to which the product had been subject;

(B) the effect of deterioration from natural causes, and from climate and other conditions under which the product was used or stored;

(C) the normal practices of the user, similar users and the product seller with respect to the circumstances, frequency and purposes of the product's use, and with respect to repairs, renewals and replacements;

(D) any representations, instructions or warnings made by the product seller concerning proper maintenance, storage and use of the product or the expected useful safe life of the product; and

(E) any modification or alteration of the product by a user or third party."

Baumann asserts the following undisputed facts to support his claim that the mower's useful safe life had not expired:

1. Baumann's expert witness testified: "I see the useful life being as long as you want to keep repairing the mower." However, the expert admitted he had not been "asked to address" whether the useful safe life of the mower had expired and his opinion was based upon his looking at the parts list, coupled with his knowledge of the components of the mower. He also stated he felt useful life was more an "academic" than a "practical" phrase in the industry. The expert testified the only

time he had inspected the mower, "[i]t was not operative, hadn't been run for a year and a half or two years." He took photographs of the mower but did not do any "destructive analysis."

2. Excel manufactured and sold replacement parts for the mower even though that particular model of mower was no longer manufactured. This assertion does not affect whether the useful safe life of the mower had expired. Installation of defective parts would not reset the clock for the entire product.

3. The owner's manual for the mower stated Excel "furnishes information and instructions that will help you achieve years of dependable performance." The manual stated the mower had been "designed to give its owner many hours of trouble free operation with a minimum amount of maintenance, but like any industrial machine proper servicing and repair will prolong its total productive life." Neither of these assertions provides a basis to conclude the useful safe life would exceed 10 years.

4. Excel admitted the mower's useful life was between 1,000 and 2,000 hours. Baumann testified he had used the mower an average of 25 times per year, approximately 3 hours each time, over the 8 years he had owned the mower prior to his accident, which would total 600 hours. This evidence is not by itself probative. There is no evidence as to the number of hours of use occurred prior to Baumann's purchase of the mower.

5. The mower was operating and in good condition when the accident occurred. Baumann performed routine repairs and maintenance on the mower from 1981 until the date of the injury and few parts ever needed replacing. These facts border on a circular argument that the useful safe life had not expired because the mower was still being used. If this argument had merit, the 10-year presumption would be useless because most, if not all, injuries would occur while a product was being used.

None of these assertions meets the burden of proof necessary to establish a genuine issue of fact exists as to whether the useful safe life of the mower had expired. Baumann has not rebutted the presumption that his injury occurred after the useful safe life of the mower had expired by a preponderance of the evidence.

III. Injury-causing aspect discoverable by reasonably prudent person.

Baumann next contends the district court erred in ruling the injury-causing aspect of the mower was discoverable by a reasonably prudent person within 10 years of the time of delivery. By this ruling, the court found the exception to the 10-year statute of repose in 60-3303(b)(2)(D) did not apply. K.S.A. 1991 Supp. 60-3303(b)(2)(D) states in pertinent part: "The ten-year period of repose established in paragraph (1) of this subsection shall not apply if . . . the injury-causing aspect of the product that existed at the time of delivery was not discoverable by a reasonably prudent person until more than 10 years after the time of delivery." Finding no case law interpreting or applying 60-3303(b)(2)(D), both Baumann and Excel analogize the question to the longstanding rule that there is no duty to warn of open and obvious dangers. See, e.g., *Long v. Deere & Co.*, 238 Kan. 766, 772-73, 715 P.2d 1023 (1986), and *Siruta v. Hesston Corp.*, 232 Kan. 654, 664, 659 P.2d 799 (1983). *Siruta* is factually closer to the situation in this case, but it provides little guidance.

In *Siruta*, plaintiff lost an arm in an accident involving a hay baler manufactured by Hesston. The accident occurred on November 12, 1979, and the KPLA did not apply. One of Hesston's defenses was that the danger was open and obvious. The court responded that the fact that a danger is open and obvious goes to the question of comparative fault, not to the issue of whether the product was defective. 232 Kan. at 664.

The phrase in question is, with one minor difference, the same as in the MUPLA. The analysis of MUPLA § 110(B)(2) states it is "[a]n exception . . . made for the unusual situation in which a product contains, at the time of delivery, a hidden defect that is not discoverable by a reasonably prudent product user and does not manifest itself until after a ten-year period has expired." 44 Fed. Reg. at 62,734.

" 'Discoverable' clearly implies means by which the user can without danger to himself reasonably detect the hidden danger and guard against it." *Gisriel v. Uniroyal, Inc.*, 517 F. 2d 699, 704 (8th Cir. 1975). Reasonable is defined as "suitable under the circumstances." Black's Law Dictionary 1265 (6th ed. 1990). Pru-

dent is defined as "careful" or "sensible." Black's Law Dictionary 1226 (6th ed. 1990).

Under the circumstances of this case, would a careful person, without placing himself or herself in danger, have been able to comprehend the danger and determine how to avoid the danger? A careful person would have read the manual, would have known where the manual valve was located, and would have seen the proximity of the valve to the moving belts and pulleys. Upon preliminary examination of the mower at the time of delivery, a reasonably prudent person would have seen that an attempt to use the manual valve when the mower's engine was running could result in injury.

Affirmed.