**Helen SPEER, Administrator of the Estate of Cindy Melissa Collins, Deceased, et al., Plaintiffs,**

v.

**The WHEELABRATOR CORPORATION, a Delaware Corporation, and Eaton Corporation, an Ohio Corporation, successor to Cutler–Hammer, Inc., Defendants.**

No. 92–2198–L.

United States District Court, D. Kansas.

June 21, 1993.

Steven C. Alberg, Hill & Beam–Ward, John R. Stanley, Alberg & Stanley, Overland Park, KS, for plaintiffs.

Mark A. Stites, Mark D. Hinderks, Roger D. Stanton, Stinson, Mag & Fizzell, Overland Park, KS, David Lee Heinemann, Stinson, Mag & Fizzell, Kansas City, MO, for Wheelabrator Corp.

Kenneth E. Holm, Boddington & Brown, Chtd., Kansas City, KS, Michael J. Gonring, Margaret C. Kelsey, Quarles & Brady, Milwaukee, WI, for Eaton Corp.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction

This products liability case is currently before the court on motions for summary judgment filed by defendants Eaton (Doc. # 54) and Wheelabrator (Doc. # 56).[1] Our jurisdiction is based on diversity of citizenship and we must, accordingly, apply the laws of Kansas to resolve the issues. Although the matter is less than clearcut, for the reasons set forth below, the defendants' summary judgment motions are denied.

This is a survival and wrongful death action brought by the estate of Cindy Melissa Collins and her heirs. On April 4, 1991, Ms. Collins died at the Klein Tools, Inc. plant in Moran, Kansas after she was hit by the bucket of the Wheelabrator Tumblast machine she was operating. Defendant Wheelabrator is the manufacturer of the Tumblast machine. Defendant Eaton is the successor corporation to Cutler–Hammer, Inc., the manufacturer of the operator button used in the Tumblast machine. In their complaint, plaintiffs have alleged counts of negligence and strict liability based on design defects, negligent failure to adequately warn as to reasonably foreseeable defects, and breaches of express and implied warranties.

In their motions for summary judgment, defendants Eaton and Wheelabrator contend that all plaintiffs' claims are barred by the ten year statute of repose set forth in K.S.A. 60–513(b). It is uncontroverted that the Tumblast machine was delivered to Klein Tools, Ms. Collins' employer, more than ten years before plaintiffs filed this action. Defendants argue that because more than ten years elapsed from the time defendants delivered the machine, plaintiffs' claims are barred by K.S.A. 60–513(b). Plaintiffs contend that the ten year statute of repose contained in K.S.A. 60–513(b), a general limitation provision, does not apply to their causes of action, rather the applicable statute is K.S.A. 60–3303(b)(1), found in the Kansas

Products Liability Act ("KPLA"), which allows actions to be brought more than ten years after delivery of a product provided the plaintiff can show by clear and convincing evidence that the product has a useful safe life greater than ten years. In addition to its argument pursuant to K.S.A. 60–513(b), defendant Eaton argues in its supplemental memorandum that it is entitled to summary judgment because it was merely a supplier of a component part for the Tumblast machine and Wheelabrator had sufficient knowledge of the use of the operating switches supplied by Eaton to obviate any duty Eaton may have had to warn Wheelabrator of dangers inherent in the use of the operator switches.

### II. Summary Judgment Standards

A motion for summary judgment gives a judge an initial opportunity to assess the need for a trial without weighing the evidence or determining credibility. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251– 52, 106 S.Ct. at 2512.

The party who files a motion for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material facts concerning its claims. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554,

---

1. The court held oral argument here on June 7, 1993. Although it had initially been deferred in hopes of a clarification of Kansas law on a related issue, the parties and the court agreed that a hearing on and resolution of these motions should now be accomplished in light of the September, 1993, trial setting.

91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party may not simply rest on its pleadings in the case but has the affirmative duty to come forward with facts to establish that a genuine issue exists necessitating a trial in the case. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

### III. The Statute of Repose

■ The issue for our consideration is whether plaintiffs' causes of action are barred by the ten year repose provision of K.S.A. 60–513(b), as contended by defendants, or whether K.S.A. 60–3303(b)(1) allows plaintiffs to bring a cause of action more than ten years after delivery of a product provided the plaintiff can show by clear and convincing evidence that the product has a useful safe life of more than ten years. In order to better understand the interplay between K.S.A. 60–513(b) and K.S.A. 60–3303, this court has spent many hours reviewing the pertinent statutes, recent amendments thereto, and opinions of the Supreme Court of Kansas construing those statutes. Following

this review, it has become painfully obvious to this court that the provisions of K.S.A. 60–3303(b) and K.S.A. 60–3303(c), which specifically speaks to the applicability of K.S.A. 60–513(b) to cases governed by the KPLA, inherently conflict, and it is virtually impossible to read the two statutory provisions in a logical manner that gives full effect to both provisions. Although this court is extremely troubled by the apparent impossibility of harmonizing the conflicting language of subsections (b) and (c) of K.S.A. 60–3303, from our review of pertinent Kansas authorities, particularly the decision in *Harding v. K.C. Wall Products, Inc.,* 250 Kan. 655, 831 P.2d 958 (1992), this court concludes that the Kansas Supreme Court would hold that the ten-year repose provision of K.S.A. 60–513(b) is not applicable to plaintiffs' claims.[2]

Our analysis begins with the general statute of limitations for tort actions in Kansas, K.S.A. 60–513.[3] K.S.A. 60–513(a) provides for a two-year limitation for tort actions and 60–513(b) and (c) explain how to determine when a cause of action accrues and serve to bar actions which do not accrue for a specified period of time following the initial act giving rise to the injury. Prior to the 1987 amendment to K.S.A. 60–513, subsection (b) stated:

(b) Except as provided in subsection (c) of this section, the cause of action in this action [section] shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall the period be extended more than ten (10)

---

2. Although this court finds that this conclusion is mandated by the Kansas Supreme Court's holding in *Harding,* it is possible that this was not the result intended by the Kansas legislature when it enacted K.S.A. 60–3303 and subsequently amended K.S.A. 60–513(b) in 1987 and K.S.A. 60–3303(c) in 1990. As discussed later in this opinion, however, it is the province of the Supreme Court of Kansas and/or the Kansas legislature to revisit this issue and not for this court to ignore *Harding's* clear expression of the posture

of Kansas law as interpreted by the highest court of this state.

3. K.S.A. 60–513 is also the applicable statute of limitations in Kansas for plaintiffs' breach of implied and express warranty claims. *See Koch v. Shell Oil Co.,* 815 F.Supp. 1434, 1438 (D.Kan. 1993); *Cowan v. Lederle Laboratories,* 604 F.Supp. 438, 441 (D.Kan.1985); *Grey v. Bradford–White Corp.,* 581 F.Supp. 725, 728 (D.Kan. 1984).

years beyond the time of the act giving rise to the cause of action.

The major Kansas case interpreting K.S.A. 60–513(b) prior to the 1987 amendment is *Ruthrauff, Administratrix v. Kensinger,* 214 Kan. 185, 519 P.2d 661 (1974). *Ruthrauff* arose out of a gas explosion and fire which destroyed a house and caused the death of one of the homeowners. Within two years of the explosion but more than ten years after the house had been built, the administratrix filed a suit against the building and plumbing contractors who had built the house. The trial court granted defendants' motion for summary judgment, stating that the meaning of K.S.A. 60–513(b) was clear that "no cause of action can arise if more than ten years have elapsed since the alleged wrongful act." *Id.* at 187, 519 P.2d 661.

The Supreme Court reversed, finding that the legislature did not intend to place a restriction on the primary two-year period which commences when an action accrues. The court held that the ten-year period referenced in K.S.A. 60–513(b) did not affect or limit the primary two-year period for bringing an action where the fact of substantial injury was immediately apparent, as in the case of an explosion and resulting fire, rather it was merely a limitation on the extension of the two-year period where the fact of substantial injury was not immediately ascertainable. *Id.* at 191, 519 P.2d 661.

The *Ruthrauff* court basically defined the "act giving rise to the cause of injury" language in the second clause of K.S.A. 60–513(b) to mean the time when the actions of defendant caused substantial injury to occur.[4] The *Ruthrauff* court interpreted K.S.A. 60–513 to contain two limitations periods, both of which commence when substantial injury occurs to a plaintiff as a result of an act by a defendant. If the injury is immediately as-

certainable, then the two-year limitations period of K.S.A. 60–513(a) is applicable. If the injury is not immediately ascertainable, then K.S.A. 60–513(b) provides that the limitations period can be extended until the injury is ascertained, up to a maximum of ten years. The *Ruthrauff* court stated that if the legislature had intended otherwise "it could have clearly expressed itself by saying that in no event shall *an action be commenced* more than 10 years beyond the time of the act giving rise to the cause of action."[5] *Id.* at 191, 519 P.2d 661 (emphasis in original).

The next case of major importance to understanding K.S.A. 60–513(b) prior to the 1987 amendment is *Tomlinson v. Celotex Corp.,* 244 Kan. 474, 770 P.2d 825 (1989). The plaintiff in *Tomlinson* filed his action based upon theories of strict liability and negligence, alleging that he sustained personal injuries through exposure to asbestos manufactured, sold or distributed by the defendants. Plaintiff's exposure to the asbestos occurred from 1965 through 1971. Plaintiff filed his action on May 11, 1987.

*Tomlinson* came before the Kansas Supreme Court as a certified question from the United States District Court. The certified question was as follows: "Does the ten-year limitation of K.S.A. 60–513(b) apply to claims involving latent diseases and, if so, is it constitutional as applied to plaintiff?" *Id.* at 474, 770 P.2d 825. The Kansas Supreme Court held that the ten-year limitation of K.S.A. 60–513(b) did apply to claims involving latent diseases and that such limitation was constitutional. In reaching its determination the court interpreted the applicability of the last clause of K.S.A. 60–513(b), which provided that "in no event shall the period be extended more than ten (10) years beyond the time of the act giving rise to the cause of

---

4. This does not necessarily correspond to the time of the defendant's wrongful act. For example, in *Ruthrauff,* the defendant's wrongful act occurred when the defendants built the house. However, under the *Ruthrauff* rule the time limitations of K.S.A. 60–513(b) did not start running until the time of the explosion, which caused substantial injury to the plaintiff.

5. The Kansas legislature took the *Ruthrauff* court up on its suggestion by using this very language

in its 1987 amendment of K.S.A. 60–513(b). By substituting the language suggested by the court in *Ruthrauff,* the legislature has clearly expressed its intent that the amended K.S.A. 60–513(b) is to be interpreted as a true statute of repose, with ten years from the occurrence of the act giving rise to the cause of action as the absolute limit for filing actions. *See Dobson v. Larkin Homes, Inc.,* 251 Kan. 50, 52–53, 832 P.2d 345 (1992).

action." In doing so, it seemingly varied from its interpretation in *Ruthrauff*. The *Tomlinson* court held that a consistent interpretation of the phrase "the act giving rise to the cause of action," as the phrase is used in the separate clauses of K.S.A. 60–513(b), required interpreting the phrase to mean the defendant's wrongful act, rather than the occurrence of a substantial injury. *Id.* at 481, 770 P.2d 825. Applying that interpretation, the court concluded that the ten-year limitation in subsection (b) began, at the latest, upon the last exposure of the plaintiff to asbestos produced, sold, and distributed by the defendants in 1971. *Id.*

It is important to our analysis in the present case to note the *Tomlinson* court's handling of an argument made by plaintiff relating to K.S.A. 60–3303. The court noted that the Kansas Products Liability Act provided for a useful safe life ten-year period of repose in products liability cases and that under K.S.A. 60–3303(a), a product seller was generally not liable for the harm caused by the use of a product after the expiration of its useful safe life. The court also noted that for products causing harm more than ten years after the time of their delivery, K.S.A. 60–3303(b)(1) provided a rebuttable presumption that the harm was caused after the expiration of the product's useful safe life. *Id.* at 481, 770 P.2d 825.

The plaintiff argued that subparagraph (b)(2)(D) of K.S.A. 60–3303 was rendered meaningless if the ten-year limitation period contained in K.S.A. 60–513(b) applied to products causing latent injuries. Subparagraph (b)(2)(D) of K.S.A. 60–3303 provided: [6]

> The ten-year period of repose established in paragraph (1) of this subsection shall not apply if the harm was caused by prolonged exposure to a defective product, or if the injury-causing aspect of the product that existed at the time of delivery was not discoverable by a reasonably prudent person until more than 10 years after the time of delivery, or if the harm caused within 10 years after the time of delivery, did not manifest itself until after that time.

The plaintiff argued that if the ten-year limitation period contained in K.S.A. 60–513(b)

was deemed to apply to such actions, then K.S.A. 60–3303(b)(2)(D) was unnecessary, since such action would in any case be barred by the ten-year limitations provision contained in K.S.A. 60–513(b). Thus, the plaintiff argued that K.S.A. 60–3303 demonstrated the legislature's intent to not include cases involving such injuries as asbestosis within the scope of the ten-year limitation of K.S.A. 60–513(b). *Id.* at 482, 770 P.2d 825.

The court rejected the plaintiff's argument. The court stated:

> As we noted earlier, the provisions of K.S.A. 60–513(a)(4) apply to all actions "for injury to the rights of another, not arising on contract, and not herein enumerated." The useful safe life provisions contained in K.S.A. 60–3303 were not adopted until eight years after the enactment of K.S.A. 60–513, and expressly provide: "Nothing contained in subsections (a) and (b) above shall modify the application of K.S.A. 60–513." K.S.A. 60–3303(c).

*Id.* at 482, 770 P.2d 825.

The Kansas Supreme Court beat a hasty retreat from its *Tomlinson* decision in *Gilger v. Lee Constr., Inc.*, 249 Kan. 307, 820 P.2d 390 (1991). *Gilger* involved a tort action by plaintiffs for injuries sustained as a result of long-term exposure to carbon monoxide. Plaintiffs contended that the heating system in their house was negligently designed and constructed by two of the defendants, and that another defendant had negligently failed to find or correct the problem. All work had been completed on the residence by August 1, 1977. Plaintiffs filed their action on November 16, 1987.

Like *Ruthrauff* and *Tomlinson*, *Gilger* involved an interpretation of K.S.A. 60–513(b) prior to the effective date of its 1987 amendment. The *Gilger* court held "the statute of limitations under K.S.A. 60–513(b) is not triggered until substantial injury occurs or is reasonably ascertainable, regardless of the antiquity of the wrongful act which caused the injury." *Id.* at 316, 820 P.2d 390. The court stated that under K.S.A. 60–513(b) "a wrongful act alone does not commence the

---

6. K.S.A. 60–3303(b)(2)(D) was not affected by the     legislature's 1990 amendment to K.S.A. 60–3303.

limitation unless substantial injury occurs at the time of the act. Rather, when an act occurs which later causes substantial injury, both the two-year and ten-year periods of limitation are triggered at the time of substantial injury, unless the facts of such injury are not ascertainable until later, in which case the two-year statute of limitations begins at the later date. But in no event, under K.S.A. 60–513(b), shall the period of limitations extend beyond ten years from the date of substantial injury." *Id.* at 314, 820 P.2d 390. The *Gilger* court specifically overruled *Tomlinson. Id.* at 317–18, 820 P.2d 390.

Although the *Gilger* court stated that it was relying on its rule in *Ruthrauff* in reaching its decision, it appears that, in fact, the *Gilger* court changed the *Ruthrauff* rule. In effect, the *Gilger* court interpreted the "act giving rise to the cause of action" language contained in K.S.A. 60–513(b) to mean the date on which the plaintiff ascertained substantial injury. This differs from what this court believes was the *Ruthrauff* interpretation, which was that the limitation period began running on the date substantial injury occurred to a plaintiff as a result of a defendant's act. The *Gilger* decision almost completely emasculated the ten-year limitations period of K.S.A. 60–513(b). The ten-year limitations provision would not begin to run under *Gilger* until a plaintiff "suspected" an injury, giving a plaintiff ten years from that date to ascertain the injury and file an action.

Our chronology of Kansas decisions leads us now to the key case in interpreting the present controversy, *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 831 P.2d 958 (1992). *Harding* involved another asbestosis case in which the plaintiff had brought an action more than ten years after his purchase and exposure to the asbestos containing products.

*Harding* marks the first case in which the Kansas Supreme Court was called upon to interpret the amended versions of K.S.A. 60–513(b) [7] and K.S.A. 60–3303.[8] The amended versions of K.S.A. 60–513(b) and K.S.A. 60–3303 were in effect at the time the present action was filed.

In *Harding,* the defendant contended that plaintiff's action had been filed over 10 years after any possible injury-causing act by defendant, and therefore was barred by K.S.A. 60–513(b). The defendant further contended that the 1990 amendment to K.S.A. 60–3303 was unconstitutional because subsection (e) revived actions prohibited by K.S.A. 60–513(b), thereby denying potential defendants of a vested defense. *Id.* at 661.

In determining the constitutionality of the retroactive application of K.S.A. 60–3303(e), the *Harding* court entered into a detailed analysis of whether the ten year limitations period of K.S.A. 60–513(b) was a statute of limitations or a statute of repose.[9]

---

**7.** K.S.A. 60–513(b) was amended by the legislature in 1987, effective July 1, 1989, to conform to the language suggested in *Ruthrauff.* The amended language provides that "in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action."

**8.** In response to the court's decision in *Tomlinson,* in 1990 the legislature amended K.S.A. 60–3303 by adding subsections (d) and (e). Subsection (d) provides that K.S.A. 60–513 shall not apply to the time to discover a latent disease caused by exposure to a harmful material (including asbestos), in which event the action shall be deemed to have accrued when the disease and such disease's cause have been made known to the person or at the point the person should have been aware of the disease and the disease's cause. Subsection (e) provided that upon the effective date of the amendment, the provisions of the subsection shall revive causes of action dismissed as a result of the *Tomlinson* decision.

The 1990 amendment also added the words "and amendments thereto" to the end of K.S.A. 60–3303(c), which affirms the applicability of K.S.A. 60–513(b) to cases governed by the KPLA. The intent of that addition, which could have great significance, remains cryptic. The *Harding* court did not in that decision address. whether or not that language was intended by the Legislature as a clear expression of its intent to carry through the repose provisions of K.S.A. 60–513(b) as amended in 1987 to override any applicability of K.S.A. 60–3303's safe life language, the only amendment to K.S.A. 60–513(b) which had taken place being the adoption of the *Ruthrauff*-inspired iron clad repose language.

**9.** Statutes of limitation generally run from the time of injury, or discovery of the injury in cases where that is difficult to detect. They serve to limit the time within which an action may be commenced after the cause of action has accrued. Statutes of limitation are generally con-

This was important to the constitutional analysis because legislatures may by express provisions make procedural law retroactive, but they may not make substantive laws retroactive because they affect vested rights which would constitute a taking of property without due process. Because Kansas constitutional protection applies to substantive rights, if 60–513(b) were determined to be a statute of repose, it could not be retroactively extended. *Harding*, 250 Kan. at 668, 831 P.2d 958. The *Harding* court determined that the ten-year provision in K.S.A. 60–513(b) was a statute of repose. Therefore, it followed that if the ten-year provision of K.S.A. 60–513(b) applied to plaintiffs' cause of action, plaintiff's action would be barred because the ten year period could not be retroactively extended by K.S.A. 60–3303(e).[10]

After spending approximately eight pages in its opinion determining that the ten-year provision of K.S.A. 60–513(b) was a statute of repose, the *Harding* court then concluded that the amended K.S.A. 60–3303(e) did not apply to the ten-year provision of K.S.A. 60–3303(b). The court stated that K.S.A. 60–3303(e) applied only to the two-year limitations period of K.S.A. 60–513(a), finding that K.S.A. 60–3303(b)(2)(D), enacted in 1981, specifically exempted the type of injury alleged in the petition from application of the ten-year period of repose of K.S.A. 60–513(b). *Id.* at 669, 831 P.2d 958.[11]

Unfortunately, the *Harding* court does not thoroughly analyze its reasoning for the determination that K.S.A. 60–3303(b)(2)(D) specifically exempted the application of the ten-year period of repose in K.S.A. 60–513(b). This court finds nothing in the language of K.S.A. 60–3303(b)(2)(D) indicating that it expressly exempts the operation of K.S.A. 60–513(b), rather it seems to refer only to the ten-year presumption established in K.S.A. 60–3303(b)(1). The *Harding* court does note the inherent conflict between its ruling and the language of K.S.A. 60–3303(c) (in light of the 1987 amendment to K.S.A. 60–513(b)), but states that it does not believe that subsection (c) nullifies what it views as the exemption provided in (b)(2)(D). *Id.* at 669–70, 831 P.2d 958. In explaining its reasoning, the *Harding* court correctly points out that at the time K.S.A. 60–3303 was enacted in 1981 there was no conflict with K.S.A. 60–513(b) because K.S.A. 60–513(b) had been interpreted by *Ruthrauff* in a manner that allowed certain actions (where the injury is not immediately ascertainable) to be brought more than ten years after a defendant's alleged injury causing act. Thus, there was room in 1981, before the 1987 amendment to K.S.A. 60–513(b) couched in *Ruthrauff's* suggested language, for an integrated statutory scheme which, in light of court interpretation, was consistent. However, the *Harding* court then concludes its analysis with the somewhat conclusory statement that:

> Moreover, because 60–3303(b)(2)(D) already exempted from the 10–year repose provision causes of action involving harm "caused by prolonged exposure to a defec-

---

sidered to be remedial and procedural. *See Menne v. Celotex Corp.*, 722 F.Supp. 662 (D.Kan. 1989).

A statute of repose, in contrast, limits the time during which an action can arise and generally runs from the time of an act of a defendant. It abolishes the cause of action after the passage of time even though the cause of action may not yet have accrued. Statutes of repose are generally considered to be substantive law. *Id.*

**10.** Judge Kelly of this court dealt with the issue in *Waller v. Pittsburgh Corning Corp.*, 742 F.Supp. 581 (D.Kan.1990), *aff'd* 946 F.2d 1514 (10th Cir.1991). There, the plaintiff claimed his personal injuries were due to exposure to asbestos products manufactured by the defendants. The plaintiff was exposed to asbestos-containing products between 1960 and 1976 and filed his suit more than ten years after 1976. The court was asked to determine whether the plaintiff's cause of action was barred under K.S.A. 60–

513(b). The court considered whether the 1990 amendment to K.S.A. 60–3303 revived the suit. Upon determining that K.S.A. 60–513(b) was a statute of repose, the court held the 1990 amendment to K.S.A. 60–3303 was unconstitutional and invalid because it served to divest defendants of a substantive right.

**11.** Although the nature of the injury in *Harding* (latent disease) was not the same as that here (personal injury from being struck), K.S.A. 60–3303(b)(2)(D) also specifically deals with a situation where the injury results from a defect which is not readily ascertainable, thus carrying its reasoning over to our case. It remains a fact question whether or not the defect here was readily ascertainable, but, if not, then *Harding's* "exemption" holding would be equally applicable here.

tive product ... exist[ing] at the time of delivery [that] was not discoverable by a reasonably prudent person," the revival provision of 60–3303, as amended in 1990, did not affect the existing exemption.

*Id.* at 670, 831 P.2d 958.[12]

In *Baumann v. Excel Industries, Inc.,* 17 Kan.App.2d 807, 845 P.2d 65 (Kan.App.1993), the Kansas Court of Appeals addressed the identical question we have in this case, that is, whether K.S.A. 60–513(b) negates whatever exceptions to the ten-year statute of repose that K.S.A. 60–3303(b) would provide.[13] The *Baumann* court relied on the *Harding* decision to conclude that K.S.A. 60–513(b) did not control over K.S.A. 60–3303(b). In support of its decision, the *Baumann* court noted the general rule of statutory interpretation that a specific statute should control over a general statute and found that the legislature had not clearly expressed an intent to have the general statute control. *Id.* at 814, 845 P.2d 65. The court also noted that applying K.S.A. 60–513(b) would render the rebuttable presumption in K.S.A. 60–3303(b) meaningless, contrary to the presumption that the legislature would not enact meaningless legislation. *Id.*[14] As a final ground in support of its ruling, the Court of Appeals stated that "to allow 60–513(b) to control would remove the quid pro quo for adopting the KPLA statute of repose, which was designed to balance the concerns of the manufacturer with the right of a consumer to recover for injuries suffered." *Id.*

Having reviewed the pertinent Kansas authorities, the glaring disharmony of subsec-

tions (b) and (c) continues to trouble this court greatly. As the *Baumann* court points out, to apply K.S.A. 60–513(b) (as seems to be indicated by the wording of K.S.A. 60–3303(c)), with its clear meaning derived from *Ruthrauff* as confirmed by *Dobson,* would render all the provisions of K.S.A. 60–3303(b) meaningless. On the other hand, finding that the provisions of K.S.A. 60–3303(b) exempt the application of K.S.A. 60–513(b) seems to ignore the plain language of K.S.A. 60–3303(c) and is apparently based on, at best, a questionable reading of the statutory language.

Although this court has concluded that it cannot logically reconcile subsections (b) and (c) of K.S.A. 60–3303, the fact remains that we must reach a determination as to how the provisions are to be interpreted. In reaching this determination, the court is mindful that when faced with this issue, both the *Harding* and the *Baumann* courts concluded that K.S.A. 60–513(b) does not control over the provisions of K.S.A. 60–3303(b).[15] Defensible arguments can be made both for and against K.S.A. 60–513(b) applying. Because this court finds that the interpretation of the *Harding* and *Baumann* courts controls its decision (and does have the virtue of preserving a purpose for language in K.S.A. 60–3303(b) which would otherwise be rendered superfluous), this court must apply their finding that K.S.A. 60–513(b) does not control over the provisions of 60–3303(b). If the interpretation of the *Harding* and *Baumann* courts does not properly reflect the legisla-

---

12. Again, although the injury is not the same here, the statutory language would appear to dictate the identical conclusion under the alleged facts of our case.

13. The issue was not raised by either party at trial. The court noted that as a general rule issues raised for the first time on appeal will not be reviewed. However, the court considered the issue because it found that the issue satisfied two of the three recognized exceptions to the general rule.

14. In fact, of course, it would seem to be the operation of the 1987 amendment to 60–513(b) that would render 60–3303(b) meaningless, rather than it having been meaningless from the outset. However, the legislature's not deleting or altering the language of 60–3303(b) upon its amending 60–513(b) in 1987 appears to amount

to the same principle. Still, the question remains unanswered, by the *Baumann* court as well as the *Harding* court, concerning the significance to be attached to the Legislature's 1990 amendment to K.S.A. 60–3303(c) which seems to have emphasized the applicability of the revised version of K.S.A. 60–513(b) by expressly referencing the amendments to that section.

15. Although neither *Harding* nor *Baumann* dealt with the potentially important subject of the 1990 amendment to K.S.A. 60–3303(c), in light of the opportunity and incentive to do so which existed, this court can only interpret that silence to mean that the Kansas courts have attached no particular significance to it which would have any bearing here.

ture's intent, it is the place of the legislature or the Kansas Supreme Court to revisit the statute and not for this court to disregard those courts' conclusions.

Because we have determined, based on the *Harding* and *Baumann* decisions, that K.S.A. 60–513(b) is not applicable to those actions brought pursuant to the Kansas Products Liability Act enumerated in K.S.A. 60–3303(b), defendants' motions for summary judgment based on the applicability of K.S.A. 60–513(b) are denied.[16]

### IV. Eaton's Separate Ground

■ Eaton contends that it was merely a supplier of a component part of the Tumblast machine built by Wheelabrator and that plaintiffs have made no showing that the operating switch manufactured by Eaton was defective. Eaton then contends that because Wheelabrator had sufficient knowledge regarding the proper use of the operator switches supplied by Eaton, Eaton was relieved of any duty it may have had to warn Wheelabrator of dangers inherent in the use of the operator switches.[17]

Eaton relies on the case of *Mays v. Ciba–Geigy Corp.*, 233 Kan. 38, 661 P.2d 348 (1983), in support of its contention. In *Mays*, Ciba–Geigy had manufactured fiberglass pipe adapters and epoxy glue which were used to install pipeline. A co-defendant in the case had improperly installed a pipeline system which resulted in an explosion that injured plaintiff. The *Mays* court analyzed whether Ciba–Geigy breached a duty to warn the purchaser of its pipeline component products, who had improperly installed the pipeline system, of the danger resulting from improper installation and testing procedures of the pipeline system. The court concluded there was no such duty to warn. *Id.* at 56, 661 P.2d 348. The court noted that

installation of gas pipelines was a "highly specialized field of endeavor—not the weekend activity of a neophyte do-it yourselfer." *Id.* at 59, 661 P.2d 348. The court went on to note that it would be wholly unrealistic to hold that the distributor's employee had to refuse to sell pipeline component parts to an individual until he had explained the fundamentals of pipeline installation and testing procedures. *Id.*

Defendant Eaton argues that *Mays* is analogous to the case at hand. Eaton states that the electrical switch is generic, with a vast multitude of applications, and was selected by trained professional engineers at Wheelabrator involved in the design and operation of complicated machinery. Eaton points out that there is no evidence that Wheelabrator either sought or desired any input from Eaton as to the use of the electrical switch or any determination as to what switches would be appropriate for use on such a machine.

Plaintiff, on the other hand, argues that there is specific evidence in the case that Eaton was on notice that its product was being used by Wheelabrator in a manner that was not safe. This evidence consists of a previous lawsuit, with Eaton and Wheelabrator as named defendants, alleging that a plaintiff had suffered an injury due to an electrical switch manufactured by Eaton sticking on a Wheelabrator machine. Plaintiff contends this fact gave rise to a duty to Eaton to warn Wheelabrator of the possible dangers in using the electrical switch in environments with excessive dust and grime.

Although the court believes it is possible that Eaton may ultimately prevail based upon the rationale of *Mays*, Eaton has failed to support its summary judgment motion with facts that warrant the granting of summary judgment at this time. D.Kan. Rule

16. This includes plaintiffs' claims based on express and implied warranty which, because the claims seek recovery of tort damages, are covered by the KPLA. *See* K.S.A. 60–3302(c); *Savina v. Sterling Drug, Inc.*, 247 Kan. 105, 126, 795 P.2d 915 (1990).

17. Plaintiffs allege that the type of electrical switch used by Wheelabrator on the Tumblast machine was not proper for the nature of the

environment in which the Tumblast machine would operate since the Tumblast machines, by their very nature, generate metallic dust which can cause the push button electrical switches to stick. Plaintiff alleges that Eaton had a duty to warn Wheelabrator that these type of electrical switches could stick if they were exposed to an environment containing excessive dust and grime.

206(c) requires that motions for summary judgment contain a concise statement of material facts as to which the movant contends no genuine issue exists, that those facts be numbered and that they refer with particularity to those portions of the record upon which movant relies. In its statement of material facts, Eaton fails to list any facts regarding what this court believes to be the critical issue in Eaton's argument, that being Wheelabrator's knowledge of the potential dangers of misusing the electrical switch. In the discussion section of its supplemental memorandum, Eaton does refer to deposition testimony of Howard Seeley, an electrical engineer for Wheelabrator. However, even were this deposition testimony properly set out in Eaton's statement of facts, the court finds it would not be sufficient to warrant granting summary judgment in Eaton's favor. In *Mays,* there was extensive evidence regarding the level of sophistication and knowledge of the installer of the pipeline. There was also evidence before the court that Ciba–Geigy provided a 42 page installation manual to purchasers of its pipeline component products. In contrast, the only evidence Eaton has presented regarding Wheelabrator's knowledge is excerpts from the deposition of Howard Seeley, an electrical engineer for Wheelabrator. These excerpts reveal only that Mr. Seeley designed the Tumblast machine, that he ordered the electrical switch, and that he decided which switch to use. Eaton fails to cite any evidence comparing the level of sophistication and knowledge of Wheelabrator with Eaton regarding the possible dangers of placing an electrical switch in an improper environment. Also, Eaton fails to cite any evidence regarding what actions it may have undertaken to warn potential users of its products of possible dangers. For these reasons, the court finds that there is an insufficient factual record before the court to warrant the granting of Eaton's summary judgment motion.

*V. Conclusion*

IT IS, THEREFORE, BY THE COURT ORDERED THAT defendant Eaton's motion for summary judgment (Doc. # 54) and defendant Wheelabrator's motion for summary judgment (Doc. # 56) are denied.

IT IS SO ORDERED.