**Alvine HINER, Plaintiff,**

v.

**DEERE & COMPANY, Defendant.**

**No. 99–4025–DES.**

United States District Court,
D. Kansas.

Sept. 21, 2001.

Kevin L. Diehl, Eugene B. Ralston, Ralston & Pope, L.L.P., Topeka, KS, John Gehlhausen, Curtis L. Fleming, John Gehlhausen, P.C., Lamar, CO, for plaintiff.

Tammy M. Somogye, Lathrop & Gage, L.C., Overland Park, KS, Thomas S. Stewart, Peter F. Daniel, Lathrop & Gage, L.C., Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendant's Motion for Summary Judgment (Doc. 93). Several additional motions are also presently pending before the court: defendant's Motion for Evidentiary Hearing (Doc. 27); defendant's Motion for Protective Order (Doc. 27); plaintiff's Motion to Exclude Testimony of Bobby Clary (Doc. 91); defendant's Motion to Exclude Testimony of Janet Toney (Doc. 95); defendant's Motion to Exclude Testimony of John Sevart (Doc. 97); and defendant's Motion to Exclude Testimony of George Rhodes (Doc. 99). The parties have filed appropriate response and reply papers to all of the pending motions; including plaintiff's Response (Doc. 107) to defendant's motion for summary judgment and defendant's Reply (Doc. 117) to said response. The court focuses its consideration on the

motion for summary judgment, for its determination directs the fate of the remaining motions. For the following reasons, defendant's motion for summary judgment shall hereby be granted.

## I. BACKGROUND

This product liability action ostensibly arises from plaintiff's ownership and use of a tractor and front-end loader manufactured by defendant. Plaintiff, a full-time farmer and former part-time professional farm equipment mechanic, seeks compensation from defendant for injuries he received in a large round bale role down.[1]

During the time relevant to this action, plaintiff owned and operated a 1964 John Deere 4020 tractor and a 1972 Model 48 John Deere front-end loader ("loader"). Plaintiff had owned both pieces of equipment for approximately nineteen years before the accident in question. In general terms, a loader is a hydraulic set of arms usually fitted with a large bucket on the end used to pick up and move material. The loader is designed to be attached to the front of the tractor, so the operator can manipulate the loader's hydraulic controls while seated on the tractor. Prior to the date of the accident in question, plaintiff had adapted the bucket of the loader by welding "ears" or brackets onto the bucket.[2] To these brackets, plaintiff attached a bale fork. With the bucket and bale fork lowered to ground level, plaintiff was able to drive the forks under a large round bale of cut hay. Large round hay bales can weigh up to and in excess of one thousand pounds. With the forks in place, plaintiff need only activate the loader controls and lift the bale off the ground. In this configuration, plaintiff was able to drive the bale to any location on his farm. Unlike other farm implements, the bale fork does not pierce or grab the bale. Instead, the bale simply rests on top of the steel forks.[3]

On January 2, 1998, plaintiff was transporting a bale as described above. Plaintiff testified that the bale was approximately one to one and half feet off the ground. While traveling at a low rate of speed towards a bale feeder, plaintiff was looking back and to his left. Apparently, while plaintiff was distracted, the loader began traveling upward. Plaintiff, however, has no recollection of the accident. At some point, the bale was elevated to such an extent as to cause it to roll off the forks, tumbling back over the loader arms, impacting plaintiff. The tractor was not equipped with a rollover protective structure or falling object protective structure. Plaintiff suffered severe injuries as a result of the bale roll down.

## II. PLAINTIFF'S CLAIMS

■ Under the Kansas Product Liability Act ("KPLA"), Kansas Statutes Annotated §§ 60–3301 to 60–3307, a plaintiff's various theories of recovery, i.e., negligence, strict liability, or breach of warranty, are melded into a single claim. Kan. Stat. Ann. § 60–3302(c). *See also Grider v. Positive Safety Mfg. Co.*, 887 F.Supp. 251, 252 (D.Kan.1995). Kansas law, however, recognizes three ways in which a product may be defective: (1) a manufacturing defect; (2) a warning defect; and

---

**1.** The following factual accounting represents the uncontroverted facts of this case.

**2.** The court uses the term "adapt" in lieu of the term "modify," for the parties dispute whether plaintiff "modified" his tractor or loader as that term is understood in product liability legalese.

**3.** The tractor was equipped with a rear hitch; to which a bale fork could be attached. It is uncontroverted that a bale resting on the rear fork in transit represented no risk of injury to the operator.

(3) a design defect. *Savina v. Sterling Drug, Inc.*, 247 Kan. 105, 795 P.2d 915, 923 (1990). Plaintiff asserts the products were defective in both design and in regards to applicable warnings.

As to design, plaintiff first claims his tractor was defective when it was sold because defendant did not include a roll-over protective structure ("ROPS") with the tractor or recommend the purchase of one. Second, plaintiff claims the loader was defective for failing to have any falling object protection.

Plaintiff's failure to warn claims are as follows: (1) defendant failed to issue a post-sale warning about the need to install a ROPS; (2) defendant failed to issue a post-sale warning to loader owners regarding defendant's alleged knowledge that its loaders could, and/or had been reported to suddenly rise in the air and drop loads onto operators without conscious operator input; (3) defendant failed to issue warnings to loader owners of the need to install the loader only on tractors with ROPS with falling object protection; (4) defendant failed, after the realization of the large round bale roll down hazard, to issue post-sale warnings to loader owners of the need to have a falling object protection system installed on tractor/loaders; and (5) defendant failed to include self-leveling or warn of the need for self-leveling on the loader.

Defendant argues for summary judgment on all claims.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise prop-erly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. 2505. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). The movant may discharge its burden "by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. 2548. Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (interpreting Fed. R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. 2548. Such a complete failure of proof on an essential

element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. 2548.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986) ("The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues."). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. 2505.

## IV. DISCUSSION

### A. Useful Safe Life

As a threshold argument, defendant submits it is entitled to summary judgment on both the design and warning claims according to the useful safe life doctrine. Under the KPLA, a manufacturer-defendant's liability for its product is directly tied to the product's useful safe life. Kan. Stat. Ann. § 60–3303(a). The KPLA begins by stating the general rule: "Except as provided in paragraph (2) of this subsection, a product seller[4] shall not be subject to liability in a product liability claim if the product seller proves by a preponderance of the evidence that the harm was caused after the product's 'useful safe life' had expired." *Id.* The KPLA defines "useful safe life" as follows: " 'Useful safe life' begins at the time of delivery of the product and extends for the time during which the product would normally

be likely to perform or be stored in a safe manner." *Id.* There is a presumption, however, that if the harm is caused more than ten years after the date of delivery, then the harm was caused after the useful safe life had expired. Kan. Stat. Ann. § 60–3303(b)(1). The ten year presumption may be rebutted by a putative plaintiff upon a showing of clear and convincing evidence, which demonstrates that the product was, at the time of the alleged harm, still operating within its useful safe life. *Id.*

In the present case, on January 2, 1998, plaintiff's tractor was approximately thirty-four years old and the loader was approximately twenty-six years old. It is undisputed that defendant has met its burden by demonstrating that this accident occurred after either product's ten-year presumed useful safe life had expired. The burden is now on plaintiff to show, by clear and convincing evidence, that the useful safe life of the products had not expired. *See Gorman v. Best Western Int'l, Inc.,* 941 F.Supp. 1027, 1031 (D.Kan. 1996) (analyzing the plaintiff's burden under the clear and convincing standard). Plaintiff's burden, however, must still be considered through the rubric of summary judgment. In other words, the issue before the court "is whether a reasonable jury could find [plaintiff] presented sufficient evidence to rebut the statutory presumption and to create a genuine issue as to whether the useful safe life" of the tractor and loader had expired before plaintiff suffered his injuries. *Id.* As this court has noted before, under Kansas law, clear and convincing evidence is not a quantum of proof, but rather a quality of proof. *Id.* (citing *Barbara Oil Co. v. Kansas Gas Supply Corp.,* 250 Kan. 438, 827

---

4. It is undisputed that defendant satisfies the definition of "product seller." Kan. Stat. Ann. § 60–3302(a).

P.2d 24, 32 (1992)). *See also Grider,* 887 F.Supp. at 253.

To aid in determining whether a product's useful safe life has expired, the KPLA offers several non-exclusive factors for consideration:

(A) The amount of wear and tear to which the product had been subject;

(B) the effect of deterioration from natural causes, and from climate and other conditions under which the product was used or stored;

(C) the normal practices of the user, similar users and the product seller with respect to the circumstances, frequency and purposes of the product's use, and with respect to repairs, renewals and replacements;

(D) any representations, instructions or warnings made by the product seller concerning proper maintenance, storage and use of the product or the expected useful safe life of the product; and

(E) any modification or alteration of the product by a user or third party.

Kan. Stat. Ann. §§ 60–3303(a)(1)(A), (B), (C), (D), (E).

Plaintiff first offers his expert, John Sevart's, opinion as to whether the tractor and loader had exceeded their useful safe lives.[5] As a general opinion, Mr. Sevart testified during his deposition that the equipment had not exceeded its useful safe life:

Question: You state in Paragraph 11, "The useful safe life of the John Deere Model 4020 tractor, serial number 21T84309 with Model 48 front-end loader has not been exceeded." What is the useful safe life of the 4020 tractor?

Answer: I would estimate it at least— well, a median of twenty-five years, which means that some of these would still have a useful life of forty years.

Question: Have you ever testified in the past that a 4020 tractor would have a useful safe life of thirty years?

Answer: Probably, because that would fall in the—within the twenty-five to forty range. That's between those two numbers.

Question: What is the useful safe life of a 48 loader?

Answer: I'd think that that—it's going to be a little less than a tractor because it's not as valuable, but probably an average of twenty years. I'd expect you could find some of them still in use thirty years.

(Sevart Dep. at 130–31). As to the statutory factors listed above, Mr. Sevart opines:

Mr. Hiner's 4020 tractor and Model 48 [loader] had not been subjected to excessive or unusual wear and tear. I examined both on two different occasions and operated them. The tractor and loader did not appear to have any excessive or unusual deterioration from climate or other conditions under which they were used or stored. The tractor and loader had been kept in good repair by Mr. Hiner and were in good repair at the times I examined them. There were no modifications of either the tractor or loader.

(Sevart Aff. ¶ 20).

Plaintiff next presents opinions of John Deere dealers in regards to 4020 tractors

---

5. Defendant has filed a motion (Doc. 97) to exclude certain testimony of Mr. Sevart. The motion does not, however, specifically advocate for the exclusion of Mr. Sevart's testimony regarding useful safe life. The motion does question Mr. Sevart's qualifications to provide an expert opinion generally. A re-

view of Mr. Sevart's resume has persuaded the court that his academic and professional background adequately establishes his qualification for summary judgment purposes. This finding is limited solely to Mr. Sevart's opinion within the useful safe life context.

in general. The dealers acknowledge that (1) parts for the 4020 vintage tractors are available; (2) the dealers do repairs on 4020 tractors; and (3) with good maintenance, the tractors have a useful safe life of thirty years or more. (Adams Dep. at 38–39; Agee Dep. at 51; Standridge Dep. at 20–21).

Finally, plaintiff submits his own testimony regarding the tractor and loader. As to the issue of deterioration and/or wear and tear, plaintiff testifies that he kept both pieces of equipment in good working order. (Hiner Aff. ¶ 28). As a semi-professional mechanic, plaintiff repaired and replaced parts as necessary. (*Id.*). Plaintiff also noted there was little deterioration due to climatic forces. (*Id.* ¶ 29). Lastly, plaintiff submits he did not "modify" either the tractor or loader. (*Id.* ¶ 21).

Not content to rely solely on the ten year presumption, defendant presents various arguments for why the tractor/loader's useful safe life had expired. In support of its position, defendant first directs the court's attention to *Baumann v. Excel Indus., Inc.*, 17 Kan.App.2d 807, 845 P.2d 65 (1993). In *Baumann*, the Kansas Court of Appeals held that the plaintiff failed to rebut the ten year presumption regarding a twenty-two year old lawn mower. 845 P.2d at 817. Unlike the case at bar, the plaintiff's expert in *Baumann* failed to come to specific conclusions regarding the mower's useful safe life. *Id.* ("the expert admitted he had not been 'asked to address' whether the useful safe life of the mower had expired"). In fact, when the expert inspected the mower, it was inoperative and had not even been started for over a year. *Id.* The court, therefore, finds *Baumann* distinguishable.

Additionally, the court is unpersuaded by *Grider v. Positive Safety Mfg. Co.*, 887 F.Supp. 251, 254 (D.Kan.1995) (Vratil, J.) (granting summary judgment on a twelve-year old manufacturing product). In *Grider*, Judge Vratil noted no expert testimony was introduced specifically concluding that the product had not exceeded its useful safe life. 887 F.Supp. at 254 ("Here, the only expert testimony produced by plaintiff is that the [product in question] should last for the life expectancy of the Possons Device itself. Plaintiff produces no evidence as to the life expectancy of the Possons Device."). *Compare Grider*, 887 F.Supp. at 254, *with Howard v. TMW Enters., Inc.*, 32 F.Supp.2d 1244, 1252 (D.Kan.1998) (Vratil, J.) (finding genuine issue existed as to a manufacturing product's useful safe life in part because plaintiff introduced sufficient expert testimony). *See also Caliendo v. AGCO Corp.*, 934 P.2d 139 (Kan.1997) (unpublished) (finding a triable issue as to useful safe life of eighteen year-old farm tractor).

Defendant next highlights plaintiff's assertion that wear and tear may have played a causal role in the accident. Plaintiff's expert, Mr. Sevart, opines that a malfunction within the hydraulic controls probably caused the loader to rise without plaintiff's input. In particular, Mr. Sevart believes that the selective control valve ("SCV") malfunctioned. This malfunction was caused either by (1) contamination in the hydraulic oil or (2) wear and tear on the valve itself. (Sevart Dep. at 162–63).

Defendant proposes the court find that the tractor/loader's useful safe life had expired because its wear and tear was so advanced as to cause the accident in this case. It is further submitted by defendant that the policy of the KPLA's useful safe life defense is to shield manufacturers from liability for allegedly worn out and aged products, which no measure of reasonable care at the time of manufacturing could prevent.

While the court acknowledges the persuasive nature of this argument, the court

declines to adopt defendant's position. First, in general, the evidence before the court demonstrates that the tractor/loader had not been subjected to excessive wear and tear or deterioration. The court is unconvinced that plaintiff's occasional repairs or maintenance requires the court to find to the contrary. Second, the court must allow all possible inferences to weigh in plaintiff's favor. In regards to the SCV, the court may not ignore the fact Mr. Sevart opined two possible causes for the valve's failure; only one of which is dependent on wear and tear. Third, the wear and tear of the tractor/loader is but one factor and may not be considered in isolation. For these reasons, the court rejects this argument.

Defendant's final argument involves the last statutory factor, i.e., modification or alteration. Defendant asserts plaintiff modified the loader to carry large round bales. It is undisputed that in 1972, when the loader was manufactured, large round bales were not commercially available in Kansas. (Sevart Dep. at 67–70). It is also uncontroverted that plaintiff knew about certain implements designed specifically to handle and manipulate large round bales. Instead of purchasing a more specialized implement, plaintiff adapted his existing loader and bucket.

At this phase of analysis the court is not concerned with the propriety of plaintiff's actions, nor is the court focused on whether the modification played a causal role in the eventual accident. Rather, the court must consider this alleged modification only to the extent it reflects on the loader's useful safe life. To this end, defendant appears to be arguing that the large round bales represented a new technology, for which the loader was apparently ill-suited. According to defendant, this farming advancement directly extinguished the loader's useful safe life, for "the [loader] had to be modified to perform new work." (Def.

Mem. at 26). If this proposition were accepted, then any product, which is superceded by technological upgrades, automatically exceeds its useful safe life.

In this case, it appears large round bales became commercially available in the early to mid 1970s. (Sevart Dep. at 70). Defendant would have the court believe the loader became obsolete (or at least outmoded) at this time and *ipso facto* its useful safe life was extinguished. In a world of ever increasing technology, on and off the farm, the court is hesitant to follow defendant's lead. Therefore, the court is unpersuaded that plaintiff's act of adding the "ears" and attaching the bale fork to the loader's bucket conclusively demonstrates that the loader exceeded its useful safe life. *See Caliendo,* No. 75,657 at 11 (questioning how attaching an eyelet to a loader bucket was a modification for purposes of useful safe life determination).

The court finds, therefore, plaintiff has submitted sufficient evidence to raise a genuine issue as to whether or not the tractor and loader had exceeded their useful safe lives. The court acknowledges this case involves products whose ages substantially exceed the ten year presumption. However, this fact is mitigated when considering the general nature of heavy farm equipment. *See generally Strunk v. Lear Siegler, Inc.,* 844 F.Supp. 1466, 1469–70 (D.Kan.1994) (considering evidence of the size and cost of a product); *Hendricks v. Comerio Ercole,* 763 F.Supp. 505, 508–10 (D.Kan.1991) (same). In particular, the testimony of defendant's dealers demonstrates that such equipment is designed and expected to operate safely well beyond ten years.

Second, plaintiff has submitted qualified testimony regarding the particular equipment in question. Mr. Sevart's opinion directly impacts all of the statutory factors, and the equipment falls within, albeit

on the far end, of his projected useful safe life predictions. While defendant may disagree with Mr. Sevart's assessment or question his possible motivation in forming such opinion, the court reserves credibility determinations for the jury. In sum, plaintiff has met its burden, and the court finds a triable issue exists regarding the products' useful safe lives. Defendant's motion will be denied as to this issue.

### B. Defendant's Duty to Warn

■■■ Though without defect in its design or manufacturing, a product may still be defective if it lacks adequate warnings of its dangerous characteristics. *Meyerhoff v. Michelin Tire Corp.*, 70 F.3d 1175, 1181 (10th Cir.1995) (applying Kansas law). Under Kansas law, " 'a manufacturer's failure to warn is measured by whether it was reasonable under the circumstances, whether the claim is based on negligence or even if the claim is made under the rubric of a strict products liability defect." ' *Miller v. Lee Apparel Co.*, 19 Kan.App.2d 1015, 881 P.2d 576, 587 (1994) (quoting *Richter v. Limax Int'l, Inc.*, 822 F.Supp. 1519, 1521 (D.Kan.1993)). *See also Wheeler v. John Deere Co.*, 935 F.2d 1090, 1099 (10th Cir.1991) (citing *Johnson v. American Cyanamid Co.*, 239 Kan. 279, 718 P.2d 1318, 1324–25 (1986)). To this general duty to warn, the KPLA carves out several exceptions. Kan. Stat. Ann.

§ 60–3305. The Kansas Supreme Court summarized these exceptions[6] as follows:

> The three K.S.A. 60–3305 categories which exclude a duty to warn are: (a) warnings related to precautionary conduct that a reasonable user or consumer would take for protection; (b) precautions that a reasonable user or consumer would have taken; and (c) obvious hazards which a reasonable user or consumer should have known.

*Patton v. Hutchinson Wil–Rich Mfg. Co.*, 253 Kan. 741, 861 P.2d 1299, 1311 (1993). In sum, "Kansas law does not impose a duty to warn of dangers actually known to the product user or of obvious common dangers or generally known risks connected with the use of the product." *Duffee v. Murray Ohio Mfg. Co.*, 879 F.Supp. 1078, 1082 (D.Kan.1995) (citing *Long v. Deere & Co.*, 238 Kan. 766, 715 P.2d 1023, 1029 (1986); *Mays v. Ciba–Geigy Corp.*, 233 Kan. 38, 661 P.2d 348, 363–64 (1983)), *aff'd*, 91 F.3d 1410 (10th Cir.1996). *See also Miller*, 881 P.2d at 588 (finding no duty to warn that clothes may ignite when exposed to a flame).

■■■ Defendant asserts it is entitled to summary judgment on plaintiff's failure to warn claims because (1) plaintiff fully understood and comprehended the risks inherent in transporting large round bales and (2) any post-sale duty established by

---

**6.** The Kansas statute provides:

> In any product liability claim any duty on the part of the manufacturer or seller to the product to warn or protect against a danger or hazard which could or did arise in the use or misuse of such product, and any duty to have properly instructed in the use of such product shall not extend: (a) To warnings, protecting against or instructing with regard to those safe-guards, precautions and actions which a reasonable user or consumer of the product, with the training, experience, education and any special knowledge the user or consumer did, should or was required to possess, could

and should have taken for such user or consumer or others, under all the facts and circumstances; (b) to situations where the safeguards, precautions and actions would or should have been taken by a reasonable user or consumer of the product similarly situated exercising reasonable care, caution and procedure; or (c) to warnings, protecting against or instructing with regard to dangers, hazards or risks which are patent, open or obvious and which should have been realized by a reasonable use or consumer of the product.

Kan. Stat. Ann. § 60–3305.

Kansas law is inapplicable in this case. The court now turns to the issues submitted by defendant.

Defendant contends plaintiff "had actual, subjective, and comprehensive knowledge of the risks of handling large round hay bales with his home-modified loader." (Def. Mem. at 34). Thus, this is not a case in which the defendant merely asserts it has no duty to warn due to the open and obvious nature of the danger. *See* Kan. Stat. Ann. § 60–3305(c). Rather, defendant seeks summary judgment based on the actual knowledge of *this* particular user/consumer. To the general danger of bale roll down, plaintiff testified as follows:

Question: You knew before your accident in January of 1998 that if [a large round bale] did get up that high and if it did roll down, there would be nothing to prevent it from hurting the operator of the tractor if it came down that direction?

Answer: If I was operating it?

Question: If anybody was operating it and the bale got up high and rolled back. You knew before your accident that if the bale came down on the operator, the operator could get hurt?

Answer: Yes.

(Hiner Dep. at 250). Plaintiff reiterates this point in his own affidavit: "I am aware of the danger of carrying large round bales with bale forks in a high position where a bale could roll back onto the tractor which is why I always carried large round bales low enough so they could not roll back." (Hiner Aff. ¶ 3).

As noted by defendant, plaintiff possessed particularized knowledge regarding his farming operation in general and specifically the operation of the tractor/loader. (Hiner Dep. at 7, 78). It is also uncontroverted that plaintiff began working with large round bales in 1975–over twenty years before the accident in question. (*Id.* at 11). Together with plaintiff's experience as a part-time farm mechanic, these facts demonstrate plaintiff possessed a high degree of expertise in the operation of his tractor/loader.

Plaintiff was also fully aware that manufacturers, including defendant, produced implements specifically designed for use in handling large round bales. (Hiner Dep. at 38). Although varying in design, these implements, including the bale grapple and bale spear, acted to restrain the bale and reduce the chance of bale roll down. In fact, plaintiff testified to having used a neighbor's tractor/loader equipped with such equipment to move round bales off a tractor trailer. (*Id.* at 30; Hiner Aff. ¶ 3).

Finally, plaintiff knew that defendant produced a ROPS system, which could be attached to his tractor. (Hiner Dep. at 160–61). On one occasion, plaintiff went so far as to "price" a ROPS system with a canopy for possible attachment to his tractor. (*Id.* at 161). Plaintiff knew that the canopy was intended in part to protect the operator from falling objects. (*Id.* at 165).

As to the general risk of bale roll down, the court is convinced, as evidenced by plaintiff's own admissions, that plaintiff fully understood the danger involved. Furthermore, the court is unable to determine what additional information or warning defendant could have imparted to plaintiff in regards to the general risk of bale roll downs. Any warning identifying the risk of falling bales or the need for falling object protection would have had, in light of plaintiff's actual knowledge, little to no utility. *See Duffee,* 879 F.Supp. at 1083 ("The plaintiff fails to identify anything found in [defendant's] instruction booklet which he did not otherwise know and which would have prevented this accident had he known it."). It is apparent plaintiff knew if the loader was cycled to a high position, the bale resting on the forks could roll down and injure the operator.

To the extent plaintiff claims the tractor/loader was defective for failing to warn of this danger, summary judgment must be granted.

Plaintiff attempts to distinguish his knowledge of the risks by asserting he was unaware of any danger of roll downs while carrying the bales in a low position. However, as plaintiff's own expert testified, there are "thousands of ways that the bales might fall." (Sevart Dep. at 172). Whether the bale roll down was the product of operator error, hydraulic malfunction, or some unidentified factor, the fact remains plaintiff was fully aware of the ultimate danger of roll down. Plaintiff may not, through creative wording of his various warning claims, cloak his knowledge to evade summary judgment. Because of plaintiff's actual knowledge, defendant had no duty to warn plaintiff or instruct him regarding the dangers of possible bale roll down. *Cf. Garay v. Missouri Pacific R.R. Co.*, 38 F.Supp.2d 892, 900 (D.Kan.1999) (denying summary judgment on warning claim because of insufficient evidence demonstrating the plaintiff's knowledge regarding the risk at issue).

 Furthermore, as to the self-rising loader warning claim, the court finds, in the alternative, plaintiff fails to demonstrate defendant had a post-sale duty to warn. Under Kansas law, a defendant-manufacturer may have a post-sale duty to warn. *Patton v. Hutchinson Wil-Rich Mfg. Co.*, 253 Kan. 741, 861 P.2d 1299, 1313 (1993) ("We recognize a manufacturer's post-sale duty to warn ultimate consumers who purchased the product who can be readily identified or traced when a defect, which originated at the time the product was manufactured and was unforeseeable at the point of sale, is discovered to present a life threatening hazard."). The duty is couched not in strict liability, but, rather, the actions of the defendant-manufacturer are judged on a reasonableness standard. *Id.* at 1314. Paramount to adjudicating the reasonableness of a defendant's decision not to issue a post-sale warning of a defect is gauging the defendant's knowledge regarding such defect. *Id.* ("A post-sale duty to warn does not exist until either actual or constructive knowledge is acquired by the manufacturer . . . ."). The Kansas Supreme Court established an initial burden for putative plaintiffs, for "[e]ach plaintiff must make an initial showing that the manufacturer acquired knowledge of a defect present but unknown and unforeseeable at the point of sale . . . ." *Id.*

In this case, plaintiff appears to be arguing that the loader bore the defect of self-rising. Plaintiff, however, does not present this defect within either the design or manufacturing paradigm. Regardless, plaintiff still must satisfy the burden of demonstrating defendant's knowledge of such defect. The court could locate only two pieces of evidence submitted on this issue by plaintiff. First, plaintiff proffers the deposition testimony of Mervin Kizlyk, which was taken in conjunction with an Oklahoma state case involving defendant. The offered exhibit consists of three pages of the deposition transcript; none of which identify Mr. Kizlyk or his qualifications. Leaving the issues of admissibility raised by such inadequacies, the following passage represents the entirety of the evidence related to the self-rising defect.

Question: Are you aware of instances where Deere loaders have suddenly gone into the up mode, up into the air, even though the operator did not have his hands on the controls, the loader controls at the time?

Answer: I've heard of those situations. I don't remember any of the details.

(Kizlyk Dep. at 68). Even if properly admissible, the court finds such testimony

wholly devoid of any persuasive evidence regarding defendant's actual or constructive knowledge of self-rising loaders.

The second piece of evidence is located within Mr. Sevart's affidavit. Mr. Sevart states: "Deere never told its customers that [large round bale roll down] accidents had been reported where the operator allegedly had not operated the controls to cause the [loader] to raise the bale in the air." (Sevart Aff. ¶ 13). Again, the court finds Mr. Sevart's blanket accusation that such accidents may have happened insufficient to find defendant had actual or constructive knowledge. In short, the record before the court utterly fails to demonstrate any specific knowledge attributable to defendant, so the court finds plaintiff has not satisfied its preliminary burden.

On a related issue, the court also finds plaintiff fails to demonstrate that the alleged self-rising defect was present in the loader at the point of sale. This element of the *Patton* holding is completely absent from plaintiff's filings. Due to these omissions, the facts of this case reveal plaintiff has failed to present a prima facie case for the presence of a post-sale duty to warn. *See Patton*, 861 P.2d at 1314. Summary judgment is appropriate.

In sum, the court grants summary judgment on all of plaintiff's failure to warn claims. The court finds plaintiff was fully aware of the danger of bale roll down. Under Kansas law, this finding requires summary judgment. As to the specific claim regarding the self-rising loader theory, the court finds, in the alternative, plaintiff failed to demonstrate the presence of a post-sale duty to warn.

## C. Modification of Tractor/Loader

The court now turns to plaintiff's two remaining design defect claims. Kansas has long held fast to its application of the rule of strict liability as set forth in Restatement (Second) of Torts § 402A.

*Brooks v. Dietz*, 218 Kan. 698, 545 P.2d 1104, 1108 (1976) (adopting § 402A). The section provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such product, and

(b) *it is expected and does reach the user or consumer without substantial change in the condition in which it is sold.*

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A (emphasis added). *See also* PIK–Civil 3d § 128.18 ("The plaintiff is entitled to recover from the defendant for her injuries provided you find the following from the evidence . . . (4) The product was expected to reach and did reach the hands of the plaintiff without substantial change in the condition in which it was manufactured."). A showing, therefore, that the tractor/loader had undergone a substantial change will preclude plaintiff from bringing his defective design claims. *See, e.g., Enfield v. A.B. Chance Co.*, 182 F.3d 931, 1999 WL 191198, at \*5 (10th Cir.1999) ("Under Kansas law, a manufacturer may not be held liable for a product's defective design where, after the product leaves the manufacturer's possession or control, there is an unforeseeable modification to the product, and the accident would not have occurred but for the substantial modification."); *Burnette v. Dow Chemical Co.*, 849 F.2d

1269, 1274–75 (10th Cir.1988) (applying Kansas law); *Howard v. TMW Enters., Inc.*, 32 F.Supp.2d 1244, 1252 (D.Kan.1998) ("Under Kansas law, if a product is modified after delivery to the purchaser, the manufacturer may not be liable for defective design."); *Mason v. E.L. Murphy Trucking Co.*, 769 F.Supp. 341, 345–46 (D.Kan.1991) ("Product modification may relieve a manufacturer of liability for a defective design if the manufacturer could not have reasonably foreseen the modification that is alleged to have occurred.").[7] Defendant asserts plaintiff's act of welding on brackets to the bucket to allow for the attachment of the bale forks constituted a modification or substantial change, so insulating it from liability under § 402A.[8]

Although no Kansas case law was submitted,[9] defendant directs the court's attention to several non-controlling cases in which courts have interpreted the "substantial change" terminology. The court finds especially instructive the definition employed by the Wisconsin Supreme Court in *Glassey v. Continental Ins. Co.*, 176 Wis.2d 587, 500 N.W.2d 295, 301 (1993) (applying § 402A). In *Glassey*, the court stated: "A substantial and material change is a change in the design, function or character of the product linked to the accident." 500 N.W.2d at 301. *See also Kobza v. General Motors Corp.*, 63 Ohio App.3d 742, 580 N.E.2d 47, 48–49 (1989) ("[A] claim for strict liability in tort cannot be maintained if there has been a material alteration to the defective product once it has left the manufacturer's control, and if this material alteration significantly contributed to the plaintiff's injury.") (applying § 402A).

Turning to the facts of this case, the court is compelled to find plaintiff's addition of the brackets and bale forks represented a substantial change as applied by § 402A.[10] First, the addition of the bracket and forks created a new function wholly unintended by defendant at the time of manufacturing. In fact, it is uncontroverted that without plaintiff's modification, the tractor/loader was unable to lift round bales. (Hiner Dep. at 99, 177–78).[11] Contrary to plaintiff's assertion, the fact that the loader was still able to perform its primary task, i.e., lifting and moving loose material, is irrelevant.

---

**7.** Ironically, none of these federal cases cite any state authority directly on point to support their position. The court agrees, however, that a Kansas court considering this question would conclude in accordance with the majority interpretation of § 402A.

**8.** The commentary following the text of § 402A offers the following explanation:

> The rule in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him. *The seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumed.*

Restatement (Second) of Torts § 402A cmt. g (emphasis added).

**9.** The court's own research produced no Kansas case directly interpreting the phrase "substantial change."

**10.** While the issue of what is or is not a substantial change may, in some cases, be an issue of fact best reserved for the jury, the evidence in this case fails to raise such a question.

**11.** Plaintiff testified as follows:
> Question: Would you agree that you can't lift a large round bale in the 48 loader's bucket without making some modifications to the bucket?
> Answer: Without my bale forks, I wouldn't try it, no.
> Question: In other words, you can't take that bucket as manufactured by Deere and go pick up a bale?
> Answer: No.

(Hiner Dep. at 99).

Second, the modification, without question, played a causal role in plaintiff's accident. Whatever additional causes plaintiff may proffer for his accident, absent the modification, this accident *could not* have happened.

In the alternative, plaintiff argues even if his modifications substantially changed the loader, defendant is not entitled to summary judgment because (1) Kansas law does not require that the alleged defect in a product be the sole cause of a putative plaintiff's injury and (2) the modification was foreseeable. Although plaintiff's first assertion may be facially correct, see PIK–Civil 3d § 128.18(5), the argument is insufficient to alter the court's conclusion. Even a finding that multiple forces acted in concert to produce plaintiff's injury, does not dissuade the court from finding plaintiff modified the loader in such a way as to place his injury outside the sphere of defendant's liability. In short, the issue of substantial change or modification is not dependent on the issue of causation.

The court is equally unpersuaded by plaintiff's second argument. The court accepts the general concept that a manufacturer-defendant may be held liable for foreseeable modifications, see cases cited *supra* at 28, yet the concept is inapplicable in this case. It is uncontroverted that in 1972, the date defendant manufactured the loader, large round bales were not commercially available. Plaintiff's own expert testified as follows:

Answer: Well, one of my primary opinions is that Deere failed to remedially or retroactively warn when the large round bales came on the farm scene. At the time the tractor was made we didn't have large round bales so you wouldn't expect them to warn about large round bales, but particularly by the mid-'70s, or actually '77 when the large round bale committee had its meetings, plus Deere

had accidents reported to it, there should have been some retroactive warnings kicked out. And I have illustrated some of those.

Question: In you answer you said when this tractor was manufactured. Did you mean when the loader was manufactured?

Answer: Both.

Question: Okay. So you would agree that at the time the loader was manufactured it would not have been expected that Deere would put a warning on the loader about large round bales?

Answer: Right. Given September of '72 I doubt that they would have.

Question: And the reason for that, as I understand it, is because it wouldn't be expected that they'd warn about something that didn't really exist yet?

Answer: Right. It wasn't that the fall hazard wasn't recognized, it's just that large round bales were not widely recognized in 1972.

(Sevart Dep. at 69–71). Given that large round bales did not exist at the time defendant manufactured the loader, the court is perplexed at plaintiff's assertion defendant should have foreseen a modification designed to effectuate the transportation of an unknown farm product. Plaintiff's only argument is that the modification was foreseeable because loader buckets were generally adaptable by users. The court is unconvinced by plaintiff's position. A scintilla of evidence is insufficient to raise an issue of fact as to whether defendant should have foreseen plaintiff's modification. *Burnette*, 849 F.2d at 1275.

In sum, the court concludes plaintiff's modification of the tractor/loader was a substantial change, and under Kansas law a manufacturer will not be held strictly liable for a product whose condition has been substantially changed after leaving its control. Summary judgment must be

granted on plaintiff's design defect claims. *See Glassey*, 500 N.W.2d at 303 (ruling "as a matter of law the trial judge could dismiss the strict products liability claim because a substantial and material change occurred to the product").

## V. CONCLUSION

Although the court found it necessary to deny summary judgment on the issue of useful safe life, the court's findings regarding plaintiff's warning and design claims demand an entry of summary judgment. Therefore, none of plaintiff's claims are viable for trial. The court's ruling on the motion for summary judgment necessarily makes the additional pending motions moot. Therefore, the court will deny the remaining motions.

**IT IS THEREFORE BY THIS COURT ORDERED** that

(1) Defendant's Motion for Summary Judgment (Doc. 93) is granted;

(2) Defendant's Motion for Evidentiary Hearing (Doc. 27) is denied as moot;

(3) Defendant's Motion for Protective Order (Doc. 27) is denied as moot;

(4) Plaintiff's Motion to Exclude Testimony of Bobby Clary (Doc. 91) is denied as moot;

(5) Defendant's Motion to Exclude Testimony of Janet Toney (Doc. 95) is denied as moot;

(6) Defendant's Motion to Exclude Testimony of John Sevart (Doc. 97) is denied as moot; and

(7) Defendant's Motion to Exclude Testimony of George Rhodes (Doc. 99) is denied as moot.